UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

LAURA RAAB; and ANDRE RAAB,

    Plaintiffs,

v.     Case No. 6:17-cv-1049-Orl-37TBS

UNITED HEALTHCARE INSURANCE
COMPANY,

    Defendant.

## ORDER

In the instant motion, Plaintiffs move for remand. (Doc. 18 ("**Motion**").) Defendant responded on August 3, 2017. (Doc. 26 ("**Response**").) The Court then permitted: (1) Plaintiffs to file a reply (Doc. 32); and Defendant to file a sur-reply (Doc. 34). For the reasons set forth below, the Motion is due to be denied.

### I.     BACKGROUND

Plaintiffs brought this action seeking medical benefits under a group health insurance policy that Defendant United Healthcare Insurance Company ("**UHIC**") issued to Constant Innovation, LLC ("**Constant LLC**"). Importantly, Plaintiff Andre Raab and his wife, Nancy Raab, are the co-owners of Constant LLC. (Doc. 18-1, ¶ 2.)

Constant LLC first applied for a group health insurance policy with UHIC on **October 6, 2008**. (*See* Doc. 26-3.) On the application form, it specified that three full-time employees would be participating in the plan. (Doc. 26-3, p. 2.) Based on this application, UHIC issued a group health insurance policy—Group No. GA759799BW ("**the Policy**")—

-1-

to Constant LLC with an effective date of **January 1, 2009**. (Doc. 26-2.)

Under the original Policy, Andre Raab was enrolled for family coverage with his wife, and two non-owner employees were also enrolled for coverage. (Doc. 26-1, ¶ 5.) Thereafter, in 2010, two additional non-owner employees enrolled for coverage under the Policy. (*Id.* ¶ 6.) Coverage for all of the individuals under the Policy, other than Andre Raab, terminated on **January 1, 2011**. (*Id.* ¶ 7; Doc. 32, ¶ 18.) At that point, the Policy was updated to cover only Andre Raab, Nancy Raab, and their children. (Doc. 26-1, ¶ 7; Doc. 32, ¶ 18.) Indeed, in 2014, the sole participants in the Policy were Andre Raab and Nancy Raab. (Doc. 18-1, ¶ 4.) Their daughter, Plaintiff Laura Raab, was a beneficiary of the Policy. (*Id.*) The Policy was terminated on **January 1, 2015**. (Doc. 26-1, ¶ 8.)

In 2015, Andre Raab submitted a claim under the Policy for Laura Raab's medical expenses during 2014. (Doc. 2, ¶¶ 5–6.) UHIC ultimately denied the claim. (*Id.* ¶ 14.) Based on this denial, Plaintiffs filed suit in the Circuit Court of the Eighteenth Judicial Circuit in and for Seminole County, Florida, on **April 12, 2017**, alleging claims for breach of contract and statutory bad faith. (*Id.* ¶¶ 20–27.) UHIC removed the case to this Court on **June 8, 2017**, on the ground that Plaintiffs claims were preempted by the Employee Retirement Income Security Act of 1974 ("**ERISA**"). (Doc. 1, ¶ 7.) Plaintiffs now seek to remand the case, arguing that ERISA is inapplicable to the Policy. (Doc. 18, at p. 6.)

## II.  LEGAL STANDARDS

"On a motion to remand, the removing party bears the burden of establishing jurisdiction." *Diaz v. Sheppard*, 85 F.3d 1502, 1505 (11th Cir. 1996). Any doubts about removal jurisdiction should be construed in favor of remand to state court. *Id.* Where a

case is removed on the basis of federal question jurisdiction, the applicable federal claim must appear on the face of the plaintiff's well-pleaded complaint. *Ervast v. Flexible Prod. Co.*, 346 F.3d 1007, 1012 (11th Cir. 2003). An exception to this rule, however, is the doctrine of complete preemption. *Id.* "If a federal statute completely preempts a state-law cause of action, a claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is in reality based on federal law." *May v. Lakeland Reg'l Med. Ctr.*, No. 8:09-cv-406-T-33AEP, 2010 U.S. Dist. LEXIS 5866, *6 (M.D. Fla. Jan. 5, 2010) (citing *Aetna Health Inc. v. Davila*, 542 U.S. 200, 207–08 (2004)). So "'when a federal statute wholly displaces the state-law cause of action through complete pre-emption, the state claim can be removed.'" *Id.* (citing *Aetna Health Inc.*, 542 U.S. at 207). ERISA completely preempts state law claims involving rights to recover benefits under employee benefit plans. *Ervast*, 346 F.3d 1007, 1014 (11th Cir. 2003).

### III. ANALYSIS

#### A. Post-Removal Evidence

As a preliminary matter, the Court finds that it is proper to consider post-removal evidence relied on by UHIC in its Response—inclusive of information regarding the Policy as it stood when it was initially issued in 2009. In their reply, Plaintiffs argue that UHIC should be constrained to the allegations in its Notice of Removal. (Doc. 32, ¶¶ 7–10.) But the Eleventh Circuit has "adopt[ed] a more flexible approach, allowing the district court when necessary to consider post-removal evidence in assessing removal jurisdiction." *Sierminski v. Transouth Fin. Corp.*, 216 F.3d 945, 949 (11th Cir. 2000). "While it is undoubtedly best to include all relevant evidence in the petition for removal

and motion to remand, there is no good reason to keep a district court from eliciting or reviewing evidence outside the removal petition." *Id.* Still, "under any manner of proof, the jurisdictional facts that support removal must be judged at the time of the removal, and any post-petition affidavits are allowable only if relevant to that period of time." *Id.* (quoting *Allen v. R&H Oil Co.*, 63 F.3d 1326, 1335 (5th Cir. 1995)). Moreover, UHIC's post-removal evidence "does not state completely new grounds or allegations for removal, but rather provides specific support for the grounds for removal that already were stated in its Notice of Removal." *May*, 2010 U.S. Dist. LEXIS 5866, *7–8 (finding it proper to consider post-removal evidence with respect to complete preemption under ERISA). Accordingly, the Court will consider UHIC's post-removal evidence relevant to assessing the existence of jurisdiction at the time of the removal.

B.  **Safe Harbor Provision**

In determining whether an employee benefit plan is governed by ERISA, the court must examine whether it falls within the regulatory "safe harbor" provision. *Miller v. Colonial Life & Acc. Ins. Co.*, No. 6:13-CV-825-ORL-36KRS, 2013 WL 4855056, at *4 (M.D. Fla. Sept. 11, 2013). Pursuant to 29 C.F.R. § 2510.3-1, an employee benefit plan is exempted from ERISA under the safe harbor provision if:

> (1) No contributions are made by an employer . . . ; (2) Participation [in] the program is completely voluntary for employees . . . ; (3) The sole functions of the employer . . . are, without endorsing the program, to permit the insurer to publicize the program to employees or members, to collect premiums through payroll deductions . . . and to remit them to the insurer; and (4) The employer . . . receives no consideration . . . for administrative services actually rendered in connection with payroll deductions . . . .

*Id.* A removing defendant bears the burden of proving that the policy fails to meet one of the safe harbor provision's criteria. *Letner v. Unum Life Ins. Co. of Am.*, 203 F. Supp. 2d 1291, 1300 (N.D. Fla. 2001).

Plaintiffs argue that UHIC's Notice of Removal and Response are insufficient to establish that the safe harbor provision does not apply to the Policy. (Doc. 32, ¶ 13.) Plaintiffs are correct that the Policy application (Doc. 26-3) attached to UHIC's Response indicates that employees were to pay 100% of the policy premium. (*Id.* at p. 2.) However, the group coverage documents (Doc. 26-2) also attached to UHIC's Response explain that the employer was required to pay at least 50% of the premium for each Eligible Person.[1] (*Id.* at p. 12.) The Court rejects Plaintiffs' argument that this constitutes an insufficient conclusory allegation. True enough, when asked by UHIC to verify the amount of employer contribution, the broker acting on behalf of Constant LLC stated that "[t]he employer is contributing 50% for employees and 0 for dependents." (Doc. 34-1, p. 1.) Thus, UHIC has sufficiently demonstrated that Constant LLC made contributions to employee premiums in 2009. The Court, therefore, finds that UHIC has met its burden of proving that the Policy did not fall within the safe harbor provision.[2]

---

[1] The Policy defines an Eligible Person as "an employee of the Enrolling Group or other person whose connection with the Enrolling Group meets the eligibility requirements specified in both the application and the Policy." (*Id.* at 68.)

[2] The Court finds it unnecessary to address UHIC's alternative argument that it be permitted to conduct jurisdictional discovery on the issue of ERISA's safe harbor provision. In any event, Plaintiffs have filed a separate, unopposed motion to conduct such discovery, which is currently pending before the magistrate judge. (Doc. 38.) Additionally, the Court need not address Plaintiffs' argument that UHIC failed to establish that the safe harbor provision did not apply to the Policy in 2014 because, as discussed *infra*, the Policy did not convert to a non-ERISA plan. *See Stern v. Provident Life*

## C. Whether There is a Relevant ERISA Plan

UHIC claims that the Policy under which Plaintiffs seek relief is governed by ERISA. Plaintiffs assert that the Policy at issue is a non-ERISA plan and, accordingly, is neither governed by nor preempted by ERISA. (Doc. 18, ¶¶ 8–10.) "Whether an insurance policy falls within the ambit of ERISA depends on whether the insurance policy qualifies as an 'employee welfare benefit plan.'" *May*, 2010 U.S. Dist. LEXIS 5866, *11–13. The Eleventh Circuit has held that an employee welfare benefit plan exits where there is:

> (1) a 'plan, fund, or program' (2) **established** or maintained (3) by an employer or by an employee organization, or by both, (4) for the purpose of providing medical, surgical, hospital care, sickness, accident, disability, death, unemployment or vacation benefits, apprenticeship or other training programs, day care centers, scholarship funds, prepaid legal services or severance benefits (5) to participants or their beneficiaries.

*Donovan v. Dillingham*, 688 F.2d 1367, 1371 (11th Cir. 1982) (emphasis added). An ERISA plan "is established if[,] from the surrounding circumstances[,] a reasonable person could ascertain the intended benefits, a class of beneficiaries, the source of financing, and the procedures for receiving benefits." *Id.* at 1373. It is clear to the Court that an ERISA plan was established by Constant LLC in 2009. The intended benefits were the medical benefits provided under the Policy; the class of beneficiaries was composed of Eligible Persons including employees; the source of financing was the Policy premiums; and the procedures for receiving benefits are set forth in the Policy. (*See* Doc. 26-2.) The remaining

---

*& Accident Ins. Co.*, 295 F. Supp. 2d 1321, 1326 (M.D. Fla. 2003) (noting the tension between the language of the safe harbor provision and the definition of an employee welfare benefit plan, but determining that the latter takes precedence).

factors in the *Donovan* test are otherwise plainly satisfied.

In addition, an ERISA plan "must provide benefits to at least one employee, not including an employee who is also the owner of the business in question." *Slamen v. Paul Revere Life Ins. Co.*, 166 F.3d 1102, 1104 (11th Cir. 1999). Relying upon *Slamen*, Plaintiffs argue that because the Policy did not cover any non-owner employees in 2014—the year in which Andre Raab's claim was denied—the Policy does not fall within the realm of ERISA. (Doc. 18, ¶ 10.) However, courts have rejected this argument, instead holding that regardless of the characteristics of the plan on the date that a plaintiff files a claim, ERISA will govern the plan if it originally covered a non-owner employee. *Nix v. United Health Care of Ala., Inc.*, 179 F. Supp. 2d 1363, 1368–70 (M.D. Ala. 2001) (explaining that the ERISA requirement that a plan be "'established or maintained' by an employer covers the situation where . . . an employer sets up an insurance plan for both owners and employees, but later all employees cease to work for the employer, leaving only the owners covered under the plan"). Accordingly, because the Plan initially covered non-owner employees, it falls within ERISA.

Still, Plaintiffs argue that even if the Plan was initially governed by ERISA, it converted to a non-ERISA plan when it ceased to cover non-owner employee participants effective **January 1, 2011**. (Doc. 32, ¶¶ 16–18.) The Eleventh Circuit has noted that the issue of "whether a policy that is initially governed by ERISA can undergo a transformation such that it is no longer part of an ERISA plan" is one of first impression in this Circuit. *Glass v. United of Omaha Life Ins. Co.*, 33 F.3d 1341, 1346 (11th Cir. 1994). "Although the court there held that ERISA governed a converted policy when the former

employee's ability to obtain the converted policy continued to be integrally linked with the original plan, the court did not decide whether conversion of a policy might defeat ERISA coverage in other circumstances." *Mizrahi v. Provident Life & Acc. Ins. Co.*, 994 F. Supp. 1452, 1453 (S.D. Fla. 1998) (explaining *Glass*, 33 F.3d at 1346). The Eleventh Circuit distinguished *Glass* from *Mimbs v. Commercial Life Insurance Company*, 818 F. Supp. 1556, 1561 (S.D. Ga. 1993), in which the court held that claims arising from the right to convert to an individual policy were governed by ERISA, while claims arising from the converted policy itself were not. *Id.* Courts in this Circuit have since held that where the employer-company contributing to the ERISA plan is sold or ceases to exist and has no further involvement in the plan, the plan converts to an individual insurance policy outside of the scope of ERISA. *Mizrahi*, 994 F. Supp. at 1453; *Loudermilch v. New England Mut. Life Ins. Co.*, 942 F. Supp. 1434, 1437 (S.D. Ala. 1996).

The facts here do not align with *Mizrahi* or *Loudermilch*. Constant LLC was not sold, nor did it dissolve. The updated Policy remained a group health insurance policy issued to Constant LLC and contemplated coverage for any future employees of the company. (Doc. 1-2, p. 2.) Moreover, employer contribution terms remained in the plan, namely—that Constant LLC was to contribute 50% of the premium for each Eligible Person. (*Id.* at 14.) Based on these facts, the Court finds that the updated Policy continued to be integrally linked with the original Policy much like in *Glass*. So the Policy continued to be governed by ERISA throughout its existence.

## IV. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Plaintiff's Motion for Remand to the Eighteenth Judicial Circuit in and for Seminole County, Florida (Doc. 18) is **DENIED**.

2. As an ERISA action, and in accordance with 28 U.S.C. § 636(b) and Local Rule 6.01(b), this case is **REFERRED** *in toto* to U.S. Magistrate Judge Thomas B. Smith for a Report and Recommendation regarding an appropriate resolution of the case. The parties are encouraged to consider consenting to jurisdiction before the magistrate judge. The consent form may be found on the Court's website.[3]

3. The Clerk is **DIRECTED** to **REFER** Defendant's Motion to Dismiss Count II of Plaintiff's Complaint and Incorporated Memorandum of Law (Doc. 12) to Magistrate Judge Smith.

**DONE AND ORDERED** in Chambers in Orlando, Florida, on August 25, 2017.



ROY B. DALTON JR.
United States District Judge

---

[3] https://www.flmd.uscourts.gov/forms/Civil/AO_085.pdf.

Copies to:
Counsel of Record